Original
No. 7113

STATE OF NEW HAMPSHIRE v. DANNY SLADE

May 12, 1975

*Warren B. Rudman*, attorney general, and *Gregory H. Smith*, assistant attorney general *(Mr. Smith* orally), for the State.

*Smith, Welts & Currier* and *Richard E. Boyer (Mr. Boyer* orally) for the defendant.

MEMORANDUM OPINION

Defendant was convicted of aggravated assault by a jury and sentenced on December 4, 1974, to no more than three years and not less than one year and one day in State prison. Defendant filed a reserved case seeking the transfer to this court of his exceptions taken during the trial. On December 9, 1974, he filed a motion to stay execution of his sentence and for release on bail pending his appeal. This motion was heard and denied on December 13, 1974. On January 2, 1975, defendant filed a petition in this court for a review under RSA 490:4 (Supp. 1973) of this denial of bail and seeking a transfer to this court of the transcript of the December 13, 1974 hearing for that purpose. On January 2, 1975, this court issued an order that pleadings be filed by the parties on or before January 16, 1975.

Defendant's petition was heard by this court on May 7, 1975. Although defendant paid on February 13, 1975, the required costs of transcription in the amount of $150, the record of the testimony at the relatively short December 13, 1974 hearing has not yet reached this court. Given that fact and accepting defendant's allegation that he will not engage in serious misconduct if released on bail, and considering also his conduct while on bail prior to trial, the court makes the following order so as to provide defendant with an opportunity for a meaningful appeal before he becomes eligible for parole in July 1975. This order is made without reference to the trial court's initial exercise of discretion so as to provide the defendant with an opportunity for a meaningful appeal. *See State v. Booton,* 114 N.H. 152, 317 A.2d 18 (1974); ABA Standards, Criminal Appeals § 2.5 (Approved Draft, 1970).

Upon the furnishing of bail by defendant to the superior court in the amount of $2,000, which is double the amount of the pretrial bail, defendant is to be released forthwith from his incarceration in State prison during the pendency of his appeal.

*So ordered.*

House of Representatives
No. 7190

OPINION OF THE JUSTICES

May 15, 1975

The following request of the house of representatives for an opinion of the justices was adopted and filed with the supreme court on April 23, 1975:

"Whereas, the House of Representatives has before it for action House Bill No. 660, An Act prohibiting the required reading of books or material which contains obscene language; and

"Whereas, said bill states that no person shall require the reading, as part of a course of instruction in a public elementary or secondary school, of any book or material which contains language which is obscene according to the definition of that term in RSA 650:1; now therefore, be it

"Resolved by the House of Representatives:

"That the Supreme Court is respectfully requested to give their opinion upon the following question:

"Does this bill violate any of the provisions of the Constitution of the United States or the Constitution of New Hampshire?

"That the Speaker of the House transmit ten copies of this resolution and ten copies of House Bill 660 to the Clerk of the Supreme Court for. consideration."

The following answer was returned:

*To the House of Representatives:*

The undersigned justices of the supreme court submit the following reply to the inquiry contained in your resolution adopted and filed with this court on April 23, 1975.

House bill 660 reads as follows:

"1. Books and Material Containing Obscene Language Prohibited. Amend RSA 189 by inserting after section 26 the following new section:

"189:26-a Books and Material Containing Obscene Language Prohibited. No person shall require the reading, as part of a course of instruction in a public elementary or secondary school, of any book or material which contains language which is obscene according to the definition of that term in RSA 650:1. Any person who violates this paragraph shall be guilty of a misdemeanor.

"2. Effective Date. This act shall take effect sixty days after its passage."

The proposed enactment applies to any material "which contains language" which is obscene under RSA 650:1.

This court has held that RSA 650:1 meets constitutional requirements. *State v. Harding*, 114 N.H. 335, 320 A.2d 646 (1974). We are of the opinion also that the provisions of RSA 650:1 which purport to apply different standards to material designed for children from that designed for adults is constitutional. *Ginsburg v. New York*, 390 U.S. 629, 638-43 (1968).

In *Miller v. California*, 413 U.S. 15, 24 (1973), the Supreme Court laid down the constitutional guidelines for determining whether a work or material is obscene. They are: "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra* at 230, quoting *Roth v. United States, supra* at 489; (b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

It should be noted that these guidelines require considering the material as a whole, as does RSA 650:1. *See Kois v. Wisconsin*, 408 U.S. 229 (1972).

Consequently, we are of the opinion that the proposed legislation is of doubtful constitutionality, because it would proscribe requiring the reading of any book or material solely because it "contains language which is obscene", without also requiring consideration of

whether, "taken as a whole", it could be found to appeal to the prurient interest, and to lack serious value.

FRANK R. KENISON
LAURENCE I. DUNCAN
EDWARD J. LAMPRON
WILLIAM A. GRIMES
ROBERT F. GRIFFITH

Request of House of Representatives
No. 7210

OPINION OF THE JUSTICES

May 26, 1975

The following request of the house of representatives for an opinion of the justices was adopted on May 6, 1975, and filed in this court on May 9, 1975:

"Whereas, there is presently pending before the House of Representatives Senate Bill 17 permitting a local option to expand real estate tax exemptions for the elderly; and

"Whereas, legislation proposing new tax exemptions should be closely scrutinized to determine its consistency with the United States and New Hampshire Constitutions; now therefore be it

"Resolved by the House of Representatives, that:

"The Justices of the Supreme Court be respectfully requested to give their opinion as expeditiously as possible on the following questions of law:

"1. May the General Court constitutionally delegate to cities and towns the authority to create tax exemptions such as proposed in SB 17, the effect of which would be to permit the cities and towns to decide for themselves, individually and independently, whether or not to grant certain additional real property tax exemptions for the elderly?

"2. Would failure of some cities and towns to adopt the optional additional exemptions authorized in Senate Bill 17 result in an uneven system of taxation among elderly citizens which would violate constitutionally mandated requirements for uniformity and equality of taxation?

"3. Do the provisions of Senate Bill 17 calling for incremental increases in the exemption with advancing age conflict with constitutionally mandated requirements for uniformity and equality of taxation?

"4. Does the failure of the bill to provide comparable tax relief for renters render the bill unconstitutional?

"5. In all respects, other than those to which the preceding questions relate, is Senate Bill 17 constitutional on its face?

"Be it further resolved that the clerk of house transmit ten copies of this resolution to the clerk of the Supreme Court for consideration by said court."

The following answer was returned:

*To the House of Representatives:*

The undersigned justices of the supreme court return the following answers to the questions with respect to Senate bill 17 contained in your resolution adopted May 6, 1975, and filed with the court on May 9, 1975.

Senate bill 17 by amendment of RSA ch. 72 would authorize towns and cities of the State, under new section RSA 72:43-a, to adopt by referendum the provisions of new sections RSA 72:43-b and RSA 72:43-c. The latter sections would provide exemptions from taxation for residential real estate as presently defined by RSA 72:29 II, ranging from five thousand dollars of assessed valuation of the property of persons of age sixty-five to seventy-five, to ten thousand dollars valuation of property of persons of age seventy-five to eighty, and a maximum of twenty thousand dollars for persons of age eighty years or older. They would further provide that such exemptions would be in lieu of the exemption presently afforded by RSA 72:39 (Supp. 1973) and RSA 72:40, and would require specified qualifications of the owners, including five years' prior residence in the State, a maximum net income of seven thousand dollars if single, and nine thousand dollars if married, and net assets not exceeding thirty-five thousand dollars. These provisions are in contrast with those of the present law, affording an exemption of five thousand dollars of valuation to persons age seventy years or over and having a maximum net income of less than four thousand dollars or if married of less than five thousand, and net assets not in excess of twenty-five thousand dollars. RSA 72:39 (Supp. 1973); RSA 72:40, :41; *Opinion of the Justices,* 110 N.H. 206, 266 A.2d 111 (1970).

Your first question is as follows: "May the General Court constitutionally delegate to cities and towns the authority to create tax exemptions such as proposed in SB 17, the effect of which would be to permit the cities and towns to decide for themselves, individually and independently, whether or not to grant certain additional real property tax exemptions for the elderly?"

This question is answered "Yes"; the General Court may constitutionally delegate the specified authority to towns and cities. No unconstitutional delegation of authority results when the legislature establishes the terms of a general act, but leaves the

determination of whether it shall have the force of law to the governing bodies of the localities to be affected or to the people themselves. "Giving them the right to be consulted was not a transfer of non-delegable power." *Goodrich Falls Co. v. Howard,* 86 N.H. 512, 517, 171 A. 761, 764 (1934). *See also State v. Rogers,* 105 N.H. 366, 371, 200 A.2d 740, 743 (1964).

Your second question whether "constitutionally mandated requirements for uniformity and equality of taxation" would be violated should less than all cities and towns adopt the optional exemptions provided by the bill, with a resulting "uneven system of taxation among elderly citizens", is answered "No". In the recent decision of *Felder v. Portsmouth,* 114 N.H. 573, 324 A.2d 708 (1974), the court had occasion to consider the constitutionality of analogous provisions of RSA 72:44-60 (Supp. 1973) authorizing a "Homeowners' Exemption". There the court reviewed the constitutional basis for exemptions from taxation with particular reference to the purpose of the Homeowners' Exemption Law, "to promote the public interest in preserving owner-occupied residential property". *Id.* at 577, 324 A.2d at 710. A minimum valuation feature of that law, not present in the bill now before you, was thought to render that law unconstitutional. The authorities and principles there discussed, however, support the validity of the pending act. *Id.* at 577-78, 324 A.2d at 710. For reasons pointed out in *Opinion of the Justices,* 112 N.H. 32, 35-36, 287 A.2d 756, 757-58 (1972), since "the property tax imposed would be uniform and equal within ... [each] taxing district, ... constitutional requirements would thus be met". *Opinion of the Justices,* 101 N.H. 549, 554-55, 137 A.2d 726, 730 (1958); *Railroad v. The State,* 60 N.H. 87 (1880).

Your third question is as follows: "Do the provisions of Senate Bill 17 calling for incremental increases in the exemption with advancing age conflict with constitutionally mandated requirements for uniformity and equality of taxation?"

While we are furnished no statistical studies which would supply factual bases for the conclusion (*Cf. Opinion of the Justices,* 111 N.H. 136, 143, 276 A.2d 821, 825 (1971)), it is reasonable to assume that with advancing age the average earning power diminishes, and income from shrinking principal decreases. The provisions by which increased exemptions would be afforded to resident owners in advanced age brackets appear to be reasonable upon their face, and hence to furnish just reason for the exemptions proposed. *Opinion of the Justices,* 112 N.H. 32, 34,

287 A.2d 756, 757 (1972). In terms of the current average tax rate for the State, the increases in exemptions provided by RSA 72:43-b and :43-c would result in limited tax reductions which on average might be thought not to exceed reasonable assistance. *See Opinion of the Justices,* 111 N.H. 136, 142, 276 A.2d 821, 824 (1971); *Opinion of the Justices,* 88 N.H. 500, 507, 190 A. 801, 806 (1937). Within constitutional limits, the wisdom and reasonableness of legislative measures are for the legislature to determine and not the courts. The increases would not offend constitutional requirements of uniformity and equality, since all resident owners within a specified class would qualify for the same exemption, subject to the same limitations.

Your third question is answered "No".

Your fourth question is "Does the failure of the bill to provide comparable tax relief for renters render the bill unconstitutional?" This question is answered "No". The evident purpose of the bill is to protect elderly homeowners from loss of their homes by reason of taxation beyond their means. The constitution does not require parallel benefits to renters, who are not directly subject to the payment of property taxes, and not in similar jeopardy.

Your resolution seeks a reply "as expeditiously as possible", and since no specific constitutional objections to the bill have been suggested beyond those previously considered, your fifth question appears to require no further answer.

FRANK R. KENISON
LAURENCE I. DUNCAN
EDWARD J. LAMPRON
WILLIAM A. GRIMES
ROBERT F. GRIFFITH

Request of the Senate
No. 7218

OPINION OF THE JUSTICES

May 26, 1975

The following request of the senate for an opinion of the justices was adopted on May 15, 1975, and filed in this court on May 20, 1975:

"Whereas, RSA 162-G was inserted by Chapter 57 of the Laws of 1972 to permit cities and towns to engage in industrial development; and

"Whereas, in Opinion of the Justices dated March 8, 1974, the New Hampshire Supreme Court indicated that RSA 162-G had one or more defects in its present form and was of questionable validity; and

"Whereas, Senate Bill 182 was prepared on behalf of concerned cities and towns which wish to utilize the provisions of RSA 162-G; and

"Whereas, RSA 162-G is of no use without proper and adequate amendment such as is proposed in Senate Bill 182; now therefore be it

"RESOLVED, that the Justices of the Supreme Court be respectfully requested to give their opinion as to whether or not the passage of Senate Bill 182 will cause RSA 162-G to become valid and constitutional in all respects.

"Be it resolved that the Secretary of State transmit seven copies of this resolution to the Clerk of the Supreme Court for consideration by said Court with the respectful request that such opinion be returned if at all possible in time for consideration of Senate Bill 182 by the House of Representatives in this session of the legislature."

The following answer was returned:

Miss Vasilike Kounas, executive secretary, New Hampshire Industrial Authority, filed a memorandum.